May it please the Court, Megan Hoffman on behalf of Mr. Gibbs. I'm with the Federal, the Office of the Federal Public Defender of Nevada. And I'd like to reserve two minutes for rebuttal, please. Very good. Manage your own time. And you need to start the clock. Thank you. Your Honors, Mr. Gibbs has lost his single opportunity for Federal review of his multiple life sentences as a result of the attorney misconduct and abandonment in this case. This Court has already answered the question of whether a petitioner's lack of knowledge of the final resolution of his state court proceeding may be an extraordinary circumstance in Ramirez v. Yates. And the United States Supreme Court has also found that a petitioner's lack of knowledge of the crucial fact of the final resolution of his state court appeal is a consideration and may be grounds for equitable tolling. Further, this Court has also already answered the question whether an attorney's failure to communicate and a petitioner's lack of access to his legal file may be an extraordinary circumstance in Spitzen v. Moore. Well, let's assume that's all true. I gather the government is going to come up and argue a lack of diligence at various points. And let's wash out the arguments that he should have filed his own – he should have, you know, called the court himself and all that. But once he knew about the decision from thenceforward, what do we do? My belief is that if we just assume that he had already expired his time. And I would say that there are a couple of factors that I believe led to his diligence in this count. The first thing is that the day that Mr. Gibbs learns of the order of affirmance from the Nevada Supreme Court, he immediately writes a letter to his attorney, Mr. Fitzgerald, and asks him, I just learned of this. What do I do now? And the reason that I believe that he's asking Mr. Figgler what he does now is because Mr. Gibbs clearly is not clear what his next steps are. At the excerpt of Record 693, there's a letter from Mr. Figgler to Mr. Gibbs sending him the State court briefing. That was about a month before the order of affirmance from the Nevada Supreme Court came down. And in that letter, Mr. Figgler, the attorney, told Mr. Gibbs that because his case was still pending in the Nevada Supreme Court, that the time for you to file postconviction relief has not yet started. And so Mr. Gibbs did not actually realize that there was something he should have been doing up until that point. In fact, he believed there wasn't anything he should be doing because his attorney told him that there was nothing to be done until he heard this. Kagan. Well, in fact, there wasn't. That's not really the issue. Right. But I just think that that is some background information in terms of why Mr. Figgler's case is so important. I think it's also telling in this case that he writes to Mr. Figgler, but he also has to ask the prison and he has to write to the Nevada State Bar to find out where Mr. Figgler is located. Our client does not even know where Mr. Figgler is located, at least as early as October of 2010 through December of 2010. And I also believe that there is, because he sent letters requesting addresses as to where his own lawyer was located because his lawyer had disappeared and not told the client where he had gone, that it took several weeks for that response to come back to Mr. Gibbs. I did file a motion to expand the record. And in that motion, one of the documents that was attached to Mr. Gibbs' letter to the Nevada State Bar was, in fact, a letter from the State Bar, which did not even tell Mr. Figgler where Mr. – tell Mr. Gibbs where Mr. Figgler was located until January of 2011. So at least through January of 2011, we know that Mr. Gibbs doesn't even know where his attorney is. After that point, they file another letter with the State Bar because Mr. Figgler still has not told Mr. Gibbs what it is that he's supposed to do at this next stage of the proceeding. And all of this time, as far as he knows, he's still being represented by Mr. Figgler. Absolutely. Mr. Figgler, in fact, to the date of when he turned over his file on February 28th, 2011, Mr. Gibbs had no indication that Mr. Figgler was not his attorney of record. He had no indication that he was supposed to do anything. And again, in my – in the supplement that I – the motion to expand the record that I filed, there was some indication both by Mr. Gibbs – Can you cite – I'm sorry? Can you cite the ER? I've got it here, but I don't know what it is. Your Honor, as to the supplement that I filed, Mr. Figgler – let me find the date here. Excuse me, Your Honor. On January 4th, 2011, that's the supplemental EOR number 41, page 41, the Nevada Supreme – excuse me, the State Bar provides Mr. Gibbs with a new address for Mr. Figgler, which is a brand-new address. If you also note at the regular EOR at page 701, the prison provided Mr. Figgler – or Mr. Gibbs with a different address as to Mr. Figgler. So between December 6th and January 4th, Mr. Figgler is given – Mr. Gibbs is given two different addresses as to Mr. Figgler's location. Further, in Mr. Gibbs's response to the State Bar complaint against Mr. Figgler, he notes that Mr. Figgler promised to file a Federal 2254 petition on his behalf. And this is confirmed by the statement of a third party. Those are both in the supplemental EOR at page 6 and page 44. And so coupled, I believe, with the letter from Mr. Figgler stating that you shouldn't be doing anything with your Federal case because you're still pending in the Nevada Supreme Court, and then not learning that Mr. Figgler was no longer his lawyer – he still believed he was his lawyer, in fact – and then learning that the case had been decided many, many months before, Mr. Gibbs reasonably approaches Mr. Figgler to say, what do we do now? What do I do next? He had his sister trying to find Mr. Figgler. He himself was contacting the Nevada Supreme Court. He also was contacting the Bar. He was contacting Mr. Figgler. He was attempting at every stage of – in the way that he could, as an incarcerated prisoner, to locate his lawyer to find out what his next step should be. So in this particular case, as far as diligence is concerned, he – the other thing that I would note is that the Respondents in this case have also argued in their answering brief that Mr. Figgler – or Mr. Gibbs had his lawyer, Mr. Gibbs had his pleadings as early as May of 2010. Why couldn't he have just started drafting the petition himself? And I would note that while he did have the briefing for this particular appeal, there is also evidence in the record to suggest that he did not have his file from trial and direct appeal. That's at EOR 389 and 393 through 394, that Mr. Gibbs advises the Nevada Supreme Court – in fact, it's one of his first state habeas petition reinstated – that he was unable to get his file from prior counsel. So at this point, I think there is not evidence in the record that Mr. Gibbs did have his entire file in order to prepare his petition. Kennedy. Can you address the 65 days that the State focuses on? It took him 65 days to prepare his petition. Yes. And when you file a petition, they say, well, you know, you just slap a cover on it from the State and petition, and you file it. Well, Your Honor, I would take issue that that's as simple as what a federal petition would be. Well, I didn't suggest that. I may be oversimplifying the State's argument. No, I do think that that is sometimes the argument that is received. First of all – Can you just – can you answer my question first? I will, Your Honor. The – in this particular case, Mr. Gibbs took, I believe it was 64 days to file his – his federal petition. I would note that his petition ended up being 52 pages long. It had 13 grounds for relief. It was typed by his sister. In fact, she signed the final page as someone who assisted in the process. And if you go back and look through the record, you'll see that all of the pleadings that Mr. Gibbs filed with the Court were typed. I suspect that he thought that was the only way he could file a pleading with the Court, but, again, that's not something that has been developed through an evidentiary hearing, for example. I also would argue that given the complex nature of this case and the complicated procedural history in which the case had to proceed, that 64 days was reasonable in this case. Mr. Gibbs, his sister picked up the file, and so we don't know whether it was actually transported to Mr. Gibbs in the prison to be able to start working on it. In addition to that, it's not completely unheard of for that to be a proper delay, which this Court finds reasonable. In Lot v. Mueller, in that case in particular, there was a 55-day gap between the file return and the filing of the Federal petition. You've answered my question. Oh, thank you. Yes, ma'am. I thought, or at least this is my question, that the way equitable toning works is that at some point it ends, and then you get whatever time is left over. In other words, you're ultimately entitled to the same amount of time you would have been entitled to anyway. So if the 55 days between when he knew of the decision and when he terminated Mr. Figler and got his papers comes out, then the 65 days, it seems to me, is just part of the statutory tolling. Is there any reason we should be even worrying about the diligence of that 65 days? Your Honor, I completely agree that that is the standard. If Mr. Gibbs is entitled to tolling from the date that remitted or issued in June of 2010 until the date that he received his file from Mr. Figler in February of 2011, if that particular time period, which I believe was 238 days, it equates to 238 days of equitable tolling. If he's entitled to that, the 64 days does not matter, because under the stop clock rule, he still has he's still within his 365-day year period of time under the Federal EDPA deadline. And so I do think, though, that there is some in this circuit, in other circuits, that there is some even conflicting authority as to whether that is the proper paper. So we have an on-bank opinion that says this absolutely clearly. I think it's absolutely clear, Your Honor. Socop D. Gonzalez, I think, makes it clear. There are quite a few other cases that do make it clear. This is an issue, though, that I can say that I have argued before this Court. There has been some dispute about whether it's clear. And so ---- We will counsel you over your time. Oh, I'm sorry. Thank you, Your Honor. We'll give you some time for a vote.  I'm Vic Schulze. I'm here representing the State of Nevada. I'm a senior deputy attorney general in Las Vegas. Let me address Judge Berzon's question from earlier in the argument. I'm not here to defend Attorney Figler, although I would point out there's one distinction between Figler's role in this case and the role of counsel in Holland v. Florida, which governs this case. Figler was the attorney for the state post-conviction appeal. He was not federal counsel. And so he didn't miss a deadline in filing anything like counsel in Holland did, and I think that's a substantial difference. Now, of course, if Mr. Figler, if within a couple of weeks, in June of 2010, had sent a letter to Mr. Gibbs, who wouldn't have been here because I wouldn't have filed the motion to dismiss based on the late pleading. But Judge Berzon focused on the due diligence issue that focuses on what Gibbs did starting on December 14th when he knew from his contact with the Nevada Supreme Court that he was late. He had four and a half months left of his 365 days, even counting the 90 days for direct appeal in the U.S. Supreme Court, excuse me, as I calculate that. So the question here is, what did Gibbs do after December 14th? Now, in Holland, the Petitioner prepared his petition the same day and filed it the next day. Now, realistically, the U.S. Supreme Court did not say that that is the sole set of facts that evidenced due diligence. I think that would be a little tight under a due diligence argument.  I mean, he had four and a half months. I mean, at a minimum. I mean, do you agree that the way equitable tolling works, from whenever it ends, you get whatever's left? I think he had my understanding is that he had, because he was late, he has to explain his conduct during that entire time period. And where do you get that from? If he had four and a half months left, if he had filed? Let's assume that the period starts on the day he found out, December 10th, or whenever that was. He has four and a half months left, just like anybody else, no? Doesn't he get the same 365 days as everybody else? He should get the 365 days that everybody else gets. The problem is, my understanding of calculating the tolling period under the time limitation period for 2254 petitions, is that it does not run from remitted or in postconviction, it runs from the decision being filed in postconviction. It runs from remitted or direct appeal. Well, yes, but that's what equitable tolling is. It means that you're taking a chunk of time out. Right. I understand that. That's what tolling means. And the Supreme – and our bank opinion in SoCoke-Gonzalez says that clear as day. My – but my point is, if he had four and a half months left in his statutory time period from December 14th to May 3rd, he was over that time period. I understand that. But all I'm trying to clarify is that if he had – on your theory, if he had filed on May 2nd, he'd be fine. I – he should get the 365 days. I don't have a problem with that. The problem that I think Mr. Gibbs has, and the reason we filed our motion, is focusing on what he did after December 14th, but also, to some extent, focusing on what he did prior to December 14th. Now, Judge Berzon, you stated you didn't – you don't want us to focus on the question of why didn't he call the Nevada Supreme Court earlier, write them earlier. Well, I didn't say I want you to write them. He could have. You can tell us whatever you want about that. He could have in August. He could have in September. But let's focus on what he did in December, and here's the kicker in this case. On page 15 of the opening brief, they cite the fact – and I do not disagree with that. I think they did a nice job briefing this. Federal public defender cites the fact that he's pro se. He can't litigate these issues unless he's got something, some idea, because he's going pro se. He's got to have at least part of the record. That's why I cited Martinez v. Ryan, not dealing with ineffective assistance, the standard issue in Martinez. There's a quote in Martinez, I think it's by Justice Kennedy, that says basically the same thing, and I quoted that in my conclusion in the answering brief, and that is that pro se petitioners rely on briefing from the state court to file their 2254 petitions. Everybody in this room who deals with habeas knows that. We've all seen that. I don't expect Gibbs to file something the next day like the petitioner in Holland did. I think that guy went way beyond due diligence in that case. But the fact of the matter is, he didn't do anything for 65 days, so if you give him a couple of days, give him a week, give him until the end of the year. Give him 30 days. He did nothing for 65 days, and that's important because, as we've shown in our brief, he was already sitting on all the important information. If you look at EOR 382, he filed a 35-page pro se brief in 2006 that he could have converted into a Federal petition in about three days, take the cover off, stick a Federal cover on there, do the verification page, and file it with the Federal court. He knows the issues. In 2010, he got all the briefing from Figgler. In 2009 he was not represented at Figgler anymore. He was appointed by the State court to do the appellate briefing. If you're making one assumption, it would be helpful to me if you would give me the record basis for it. The assumption is that he wasn't represented at Figgler anymore. Figgler only represented him through the post-conviction appeal. That's correct. And at that point in time, he was on his own. How do we know that? I mean, there are some indications. Because he was appointed by the State court to do the appellate briefing. But there is some indication that Figgler, perhaps in compensation for his behavior, had said, I'll file the 2254 fee. My recollection of counsel's argument is that the client made that representation, not that Figgler did. If Figgler was appointed by the State courts, his job ended with the briefing. He preserved those issues. He filed that State appeal on time. He raised all those issues. But he didn't screw this whole thing up. He had no obligation to do anything like tell the guy what to do next? It's an interesting question. Legally, I would say no. Ethically, I would say yes. I think he should have contacted his attorney. And as I've said, I'm not here to defend Figgler. Had Figgler sent the guy the brief, we wouldn't be here today. We'd be here today on the merits, I presume. So he wasn't in his letter saying, what do I do now? A perfectly sensible way to deal with this? I think that, in my view, I think ethically he was obligated to tell his client. But the problem is the client has a conjunctive standard that he has to meet, even if Figgler was appointed. I know, but what I'm saying is what the client did was write a letter to his lawyer saying, you know, what do I do now? But what he didn't do was take a few – he did not do what the Petitioner in Holland did, and that is get to work and file a brief. Again, I don't think he had to do that in a day or a week. But he could have converted his – he had all the briefing from the appeal in May of 2009. He was sending letters to Figgler six months earlier than that in November of 2010 for the first. He had the state's answering brief in November of 2009 because he sent Figgler a letter critiquing the brief. That's how on top of his issues he was. He was critiquing the state's brief. And then he filed his own brief five years earlier. Then he tried to get his sister to get the materials, and he couldn't even find him to do that. Right. And then he had a right to the State Bar to get his address, and then even then he couldn't get the materials, so he had a right to the State Bar to complain that he wasn't getting the materials. Agreed. And so until he got the materials – I mean, is your notion that he didn't need the materials at all? Is that the idea? My argument is he had the materials. He had everything he needed because – and he had all the briefing in 2010. We know he had the state responding brief in 2009. He did his own detailed – I mean, look at 382. This guy's briefing is better than some of the attorneys who appear in front of you. I hate to say that, but in fact it's true. This guy is a pretty good pro se lawyer representing himself, and he was sitting on that brief for five years. He could have turned that into a 2254 petition by the end of the year, and he didn't do that. That's the problem. Did you think if somebody was a lawyer in a case and hired to do a Federal petition and had all the previous briefing but not the record, that he would just go ahead without trying to get the record first? Well, according to what Justice Kennedy said in the Martinez quote that we have in our conclusion, that's the point. Oh, yes, but you're not obligated to do something. No, no, no. My point is that the briefing – In a shoddy fashion. My point is that the briefing is sufficient. I don't think – I don't think the – I don't think a pro se petitioner is going to benefit from having the entire record because he has to call his own claim. According to the Kennedy quote from Martinez and the argument of my opponent, it's the briefing that he needs and it was the briefing that he had because the briefing is the issue already framed, already worked up, combined with the law and the facts. That's what he needed. And my core argument is he'd been sitting on that for five years. He should have filed that as a 2254 petition by the end of 2010. And that's the lack of due diligence in our opinion. Thank you, Counsel. Thank you, Your Honor. We'll give you two minutes for rebuttal. Just very briefly, Your Honors, I just wanted to clarify my argument before and to respond to the Respondent's discussion about whether or not he had his complete record. Mr. – we do concede that Mr. Gibbs did have his state post-conviction briefing in May of 2010. However, in the record, in the excerpts of records provided to this Court, Mr. Gibbs advises the Nevada Supreme Court that he did not have his trial file or his direct appeal file at a prior time. And there is no evidence in the record that he had it at the time that he learned of the affirmance in this case. So although he might have had his post-conviction briefing, there is no evidence in the record that he had his direct appeal briefing. And as this Court is aware, the Federal habeas corpus petition incorporates both of those proceedings. And so there is no evidence in the record that Mr. Gibbs ever had his complete file at any time before Mr. Figgler turned it over to him on February 28, 2011. So the date on which you think the tolling stopped was what? February 28, 2011. When he got the documents. When Figgler finally turned over the file. Yes. Yes, Your Honor. I'm sorry. What was the date? February 28, 2011. There is a receipt of the turnover of the file to Mr. Gibbs' sister at the very end of, I believe, volume four of the excerpt. The other thing I would say is. Is there anything in the current record, not in the material that you submitted separately, which I have real problems dealing with. I understand, Your Honor. About any promise by Figgler to represent him in the 2254. Your Honor, not that I was able to locate. I, we had these records. I was not counsel below. I do not have any indication of that in the record. But I do think, and I believe that this case warranted an evidentiary hearing on the facts, just as they are in the excerpt. And I do think that the one fact that we do have in the record in terms of Mr. Figgler. So is that ultimately what you're asking for is an evidentiary record, an evidentiary hearing on the equitable tolling issue? I believe there's enough for this Court to find that there's equitable tolling on the facts. But if this Court is inclined not to, in particular because of the supplemented record that we submitted, that I submitted last week, then I would request an evidentiary hearing to iron out some of these facts in dispute. I do think, though, however, Your Honor, that the letter that I mentioned in my previous argument about Mr. Figgler advising Mr. Gibbs that because you're still pending the Nevada Supreme Court, there's no point in going ahead and starting working on your post-conviction pleadings. I do think that that is an indication that they have had a discussion about future pleadings. There's no reason that Mr. Figgler would have told him to work on a post-conviction petition but for the Federal petition because he was already done with the State petition. He was pending on all briefing before the Nevada Supreme Court. Lastly, Your Honor, really briefly, I would just note that as to the pro se brief that the Respondents mentioned, that Mr. Gibbs could have just ripped off the cover sheet and put on a new cover sheet. As we mentioned in our reply brief, if you review those documents, the petition at 382, it was a pro se opening brief to the Nevada Supreme Court, had nothing to do with the merits of his case. The briefing at 382. But my understanding of what he's saying is he could have taken the post-conviction documents filed by Figgler after the remand in California, in Nevada, and then filed those as the Federal petition. Well, Figgler did not actually file anything in the State district court on Mr. Gibbs' behalf. Mr. Figgler was only counsel of record for the U.P.O. On the appeal, I understand. Right. But essentially he's saying that would have been enough to at least preserve his rights. Only as to the post-conviction claims, not as to the direct appeal claims, and we have no evidence in the record that he did have any of the direct appeal briefing. And the pro se brief that they refer to at page 382 is a pro se brief that only addresses the procedural default and good cause arguments to argue for equitable tolling based on the default of his first petition when his lawyer forgot to file the petition that the client sent to him. He certainly has not been served well by the Nevada bar. It is true, Your Honor. This was not a bright day for our bar. Three times or something. And this client in particular. And, you know, just as an aside, his trial counsel is now incarcerated in a Federal prison. So this case has kind of the tricep dip. Thank you, Counsel. Thank you. The case is currently submitted for decision. We'll proceed with the argument in United States v. Thornton.
judges: Thomas, Fisher, Berzon